UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ROCCO TERRANOVA,            )
                            )
    Plaintiff,              )   Case No. 09 CV 3027
                            )
v.                          )   Judge John W. Darrah
                            )
SHEET METAL WORKERS INTERNATIONAL )
ASSOCIATION; SHEET METAL WORKERS' )
LOCAL UNION NO. 73; THOMAS BUREK; )
ROBERT SCHNEIDER; DANIEL AHERN; and )
ROBERT BERNACKI,            )
                            )
    Defendants.             )

## MEMORANDUM OPINION AND ORDER

Plaintiff Rocco Terranova has filed a Motion for Emergency Temporary Restraining Order and/or Preliminary Injunction barring Defendants from enforcing discipline against him based on Sections 411 and 529 of the Labor Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 411(a)(2) and (a)(5), and 29 U.S.C. § 529. (Doc. No. 9.)

### BACKGROUND

The following background facts are derived from Terranova's Verified Complaint and the exhibits attached thereto and other submissions, including declarations and a transcript of a hearing conducted by the Defendants.

Terranova is a member in good standing of Sheet Metal Workers' Local Union No. 73 ("Local 73"), a local labor organization. Terranova served as an elected Business Agent of Local 73 from approximately 2004 to April 28, 2009. Defendant Thomas Burek

1

is President and Business Manager of Local 73. He is also the 10th General Vice President on the General Executive Council of the Sheet Metal Workers International Association ("SMWIA"), an international labor organization, having its principal headquarters in Washington, D.C.

In August 2008, Burek asked Terranova to run on his slate in the next union election scheduled for June of 2009. However, Terranova declined and decided to run against Burek in the June 2009 union election because Terranova was dissatisfied with Burek's management of Local 73. Terranova announced that he would run for the office of President/Business Manager of Local 73 in November 2008 in a letter to Local 73 members, stating that he was concerned about the fiscal management of the union and believed the union needed to move in a different direction on many issues. Specifically, Terranova distributed campaign literature to union members, expressing his opposition to Burek's fiscal management of the union. For example, in one piece of distributed campaign material, Terranova stated his intention, if elected, to "lower all full-time Officers' salaries. No more Cadillacs for Officers."

After Terranova announced his intention to run, Union Trustee Michael May announced his intention to run on Terranova's slate for the position of Recording Secretary. In December 2008, May and Terranova received information that Burek had signed a contract to hold the Local 73 holiday office party at the Clubhouse restaurant, even though Burek had told union members that he intended to hold the party at the union hall to save Local 73 money. May received documentation from the Clubhouse restaurant, indicating that Burek agreed to hold Local 73's office party there on

December 18, 2008, and agreed that the restaurant would be paid for the full cost of the party if it did not cancel the event more than ninety days prior thereto. Accordingly, Burek's Local 73 credit card was charged $2,125.00 for a deposit for the party by the Clubhouse; and the card was subsequently charged an additional $6,887.50, for a total of $9,012.50, even though the party was never held there.

May and Terranova discussed this information with other union members prior to the union meeting on January 9, 2009. At the January 9, 2009 meeting, union members confronted Burek with the information. Burek became embarrassed and angry. Terranova spoke further at the meeting about what he perceived to be Burek's waste of union resources.

On February 20, 2009, Burek and Defendants Robert Schneider and Daniel Ahern (other officers of Local 73 who were members of Burek's slate of candidates for the June 6, 2009 union election) filed union charges against Terranova and May, claiming they violated four provisions of the SMWIA Constitution by receiving and distributing financial records from the Clubhouse and by receiving and distributing other records from Morton's Steakhouse pertaining to the Local 73 Journeyman and Apprentice Training Center ("JATC").[1]

---

[1]Specifically, Terranova and May were charged with violating the following provisions of the Constitution:

Article Thirteen (13), Section 8(b): Duties of Business Representative

Article Seventeen (17), Section 1(c): Engaging in conduct at union or council meetings, or at other locations, that tends to or does interfere with, diminish, or destroy the ability of an officer, business manager, business representative, or member to perform legal, contractual or constitutional obligations on behalf of a

3

Even though such charges usually would have been heard by a Local 73 trial board, and any decision thereof would have to be approved by a majority of the Local 73 membership, Burek requested that the charges be heard by a SMWIA trial board, so that the Local 73 membership did not have the opportunity to approve or disapprove any resulting discipline.[2]

Terranova's request for a continuance of the hearing so that several of his witnesses could attend was denied by the SMWIA Trial Board as was his request that the charges against him be dismissed. A hearing was held on the charges against May and Terranova on April 1and 2, 2009. The SMWIA Trial Board allowed Burek, Schneider and Ahern to present material statements of witnesses by email and affidavit, thereby denying Terranova and May the opportunity to cross-examine the witnesses. In addition, the chair of the SMWIA Trial Board revealed that he relied on *ex parte* communication

---

Local Union or Council or to discharge the duties of the office to which such individual was elected or appointed.

Article Seventeen (17), Section 1(l): Committing any act of fraud, embezzlement, misappropriation, or appropriating to his or her own use of any money, property, or thing of value belonging to this association or any Local Union or Council thereof, or to any fund or committee administered or trusteed in whole or in part by a Local Union, or refusing, failing or neglecting to deliver at specified periods or on demand, in accordance with the Constitution a full and accurate accounting, all monies, properties, books and records for examination and audit.

Article Seventeen (17), Section 1(m): Engaging in any conduct which is detrimental to the best interests of this Association or any subordinate unit thereof or which will bring said unions into disrepute.

[2]Defendants during oral argument contended this was necessary to avoid conflicts of interest which would have occurred because the Local 73 trial board would have included Burek, his relative, and other members of Burek's slate of candidates in the June 2009 election.

4

with SMWIA President Michael Sullivan in which Sullivan interpreted the SMWIA Constitution adversely to Terranova and May. The chair refused to give Terranova and May a copy of the documents reflecting the *ex parte* communications.

On April 24, 2009, the SMWIA Trial Board issued a decision, finding that Terranova had violated the Duties of a Business Representative set forth in Article Thirteen (13), Section 8(b) of the SMWIA Constitution. The Trial Board found that Terranova violated Article Seventeen (17), Section 1(c), stating:

> The Trial Board finds that by his involvement in a conspiracy to contact the "Club House" restaurant and "Morton's Steakhouse" Business Representative Terranova interfered with, diminished and destroyed the ability of an officer to perform legal, contractual or constitutional obligations on behalf of the Local Union. The Business Manager Tom Burek was already investigating the charges to the Local Union credit card. Business Representative Rocco Terranova received critical information and had no authority to allow either the Local Union or the JATC information and credit card numbers to be distributed.

The Trial Board found that Terranova violated Article Seventeen (17), Section 1(i), stating:

> The Trial Board finds that Business Representative Rocco Terranova conspired with a rogue Local Union Trustee (Michael May) to falsify their authority in the Local Union to dishonestly and fraudulently obtain records which, by their very nature, are the property of the Local Union and a trust fund. His purpose was to use these records for his own purposes against legitimate officers of the Local Union and Trustees of the JATC. As an officer of a Local Union sworn to uphold its Constitution, he jeopardized the Local Union's and the JATC's credit card numbers by allowing the distribution of these numbers to an unknown number of individuals.

Finally, the Trial Board found that Terranova violated Article Seventeen (17), Section 1(m), stating:

> The Trial Board finds that by allowing distribution of the Local Union and the JATC's credit card numbers these charges were brought. Business Representative Terranova's actions damaged the Local Union's reputation with the "Club House" restaurant and "Morton's Steakhouse," both of which have been long time vendors to the Local Union and the JATC for their annual Christmas functions.
>
> The above findings demonstrate that Terranova's conduct tends to, and actually has, interfered with and diminished the ability of Business Manager Thomas Burek to perform his legal and contractual obligations. The widespread distribution of the credit card numbers received from the restaurant, coupled with publicity that the restaurant provided the information, has tended to, and actually has, impaired the ability of Business Manager Thomas Burek to negotiate, resolve, and conclude the contractual relationship between the Local and the "Club House" restaurant. . . .
>
> Further, the conduct of Business Representative Terranova will and has impaired the ability of Business Manager Thomas Burek, and other Local Union officials to conduct business operations in the future. This conduct will likely cause other business[es] to be reluctant, hesitant, or even to refuse, to do business with the Local Union. That Local Union officials embroil a business . . . in a dispute will tend to chill such businesses from either doing business, or doing business on favorable terms, with the Local Union.

Based on these findings, the Trial Board imposed discipline on Terranova, requiring him to pay a fine of $1,000 per charge for a total of $8,000; and ordering that he "be removed from and be ineligible to hold any appointed or elected office or position with SMWIA Local #73, and any other affiliated Local Union, Council and/or trust fund until April 30, 2010."[3]

---

[3] The Trial Board also found that Michael May violated Article Thirteen (13), Sections 1(c), (I) and (m) of the Constitution and imposed discipline on him.

On April 28, 2009, Terranova appealed the SMWIA Trial Board's decision to the SMWIA General Council and requested that the discipline against him be stayed since he intended to run for union office. On May 1, 2009, Terranova was nominated for President and Business Manager. However, after he was nominated, Burek said that he had just received the May 1, 2009 decision by the SMWIA that the SMWIA's decision would not be stayed. Burek stated that Terranova and May should not be allowed to be nominated or placed on the ballot. At this same meeting, Burek announced that he had appointed his brother-in-law, Defendant Robert Bernacki, to be Local 73 election judge for the June 2009 union election. On May 7, 2009, Bernacki sent Terranova a letter, stating that Terranova's name would not appear on the June ballot. Terranova has appealed the SMWIA's decision to the General Executive Council of the SMWIA; however, the appeal will not be heard until August 2009, after the June election.

On May 22, 2009, Terranova filed this lawsuit, claiming that the discipline imposed against him violates his right to freely criticize the leadership of Local 73 pursuant to sections 411(a)(2), 411(a)(5) and 529 of the LMRDA, 29 U.S.C. §§ 411 and 529. Terranova alleges that his conduct did not violate the SMWIA Constitution, but the charges were brought against him as pretexts for Burek's, Schneider's and Ahern's intent to discipline him for his speech with respect to Burek's fiscal management of the union. Terranova submitted a declaration of Dr. Donald Perry, a longtime member of Local 73 and a past candidate for office in Local 73. Perry states in his opinion that the actions taken against Terranova in this case were taken by Defendants to suppress dissent within

the union regarding union management and that spurious charges were brought and discipline was imposed against credible Local 73 members so that they will be ineligible to run against incumbent officers in the upcoming June election. Further, Perry states that in 2000, he ran against a former Local 73 President and Business Manager, Stan Karczynski, in a union election in 2001; and Karczynski filed internal union charges against Perry, accusing Perry of "libeling" Karczynski. Burek testified on Karczynski's behalf at the union hearing on the charges against Perry. Perry was found guilty and suspended from union membership for a period of time, which precluded him from running in the next union election. The penalty against Perry was upheld by General President Sullivan and the SMWIA General Executive Council, and Perry filed a lawsuit in federal court in the Northern District of Illinois pursuant to the free speech provisions of the LMRDA. Karczynski, Local 73 and the SMWIA agreed to overturn the discipline against Perry; but the case was not settled until *after* the election in which Perry would have run against Karczynski had taken place.

Terranova seeks a temporary restraining order and/or preliminary injunction, seeking, among other things, an order enjoining the discipline imposed by the SMWIA against him, including the SMWIA's order holding him ineligible to hold office until 2010, and directing Defendants to place his name on the ballot as a candidate for the office of President and Business Manager in the June 6, 2009 election. Terranova has submitted the declaration of Brian Mulheran, the individual whose name presently appears on the ballot for the position of President and Business Manager on the team challenging Burek's slate. Mulheran states that he would allow his name to be removed

from the ballot, and Terranova's name substituted for his, if the Court grants Terranova's motion. Mulheran states that he believes the discipline taken against Terranova is unjust and that Mulheran was nominated for the position of President and Business Manager only to ensure that the slate challenging Burek's had a candidate on the ballot in that position if Terranova's name was not allowed.

Further, evidence before the Court at the hearing showed that an adequate ballot can be printed competently before the June 6, 2009 election for a cost of about one thousand dollars.

## LEGAL STANDARD

In considering a motion for a preliminary injunction, a district court must first determine whether the moving party has demonstrated: (1) some likelihood of prevailing on the merits; and (2) an inadequate remedy at law and irreparable harm if preliminary relief is denied. *Publications Int'l Ltd. v. Meredith Corp.*, 88 F.3d 473, 478 (7th Cir. 1996). If the movant demonstrates these threshold requirements, then the court must (3) balance the harm to the nonmoving party if the requested preliminary relief is granted against the irreparable harm to the movant if relief is denied and (4) consider the public interest, meaning what effect granting or denying the injunction will have on nonparties. *Grossbaum v. Indianapolis-Marion Building Authority*, 100 F.3d 1287, 1291 (7th Cir. 1995). The court weighs all four factors in deciding whether to grant the injunction, seeking at all times to "minimize the costs of being mistaken." *Pride Communications Ltd. Partnership v. WCKG, Inc.*, 851 F. Supp. 895, 900 (N.D. Ill. 1994) (quoting *American Hosp. Supply Corp. v. Hospital Prods. Ltd.*, 780 F.2d 593 (7th Cir. 1986)).

In determining whether federal subject-matter over an action exists, the Court may look beyond the jurisdictional allegations to evidence outside of the pleadings. *See St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 625 (7th Cir. 2007).

**ANALYSIS**

Defendants oppose Plaintiff's request for preliminary injunctive relief, essentially, on three grounds: (1) the Court lacks subject-matter jurisdiction over the case; (2) the injunctive relief sought is not appropriate relief; and (3) because Plaintiff has not completely exhausted his remedies within the union organization.

*Subject-Matter Jurisdiction*

Terranova challenges his ineligibility to run in the June 2009 union election under Section 101(a)(2) of Title I of the LMRDA, which protects the rights of members to:

> meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings . . . .

29 U.S.C. § 411(a)(2). Section 101(a)(4) of Title I provides:

> No labor organization shall limit the right of any member thereof to institute an action in any court . . . irrespective of whether or not the labor organization or its officers are named as defendants or respondents in such action or proceeding . . . *Provided*, That any such member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof: *And provided further*, That no interested employer or employer association shall directly or indirectly finance, encourage, or participate in, except as a party, any such action, proceeding, appearance, or petition.

29 U.S.C. § 411(a)(4).

Section 101(a)(5) sets forth procedural safeguards against improper disciplinary action and provides:

> No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officers thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; and (C) afforded a full and fair hearing.

29 U.S.C. § 411(a)(5).

Defendants contend that the Court lacks subject-matter jurisdiction over Plaintiff's claim because, although Terranova has characterized his action as one based on a violation of his free speech rights under Title I of the LMRDA, his action properly arises under Title IV of the LMRDA, 29 U.S.C. § 481 *et seq.*, which governs the election of union officers and requires that union members have "a reasonable opportunity . . . for the nomination of candidates . . . and . . . the right to vote for or otherwise support the candidate . . . of [their] choice." 29 U.S.C. § 481(e).

Under Title IV, the union member's remedy for Title IV violations, following exhaustion of intra-union remedies, is to file a complaint with the Secretary of Labor. 29 U.S.C. § 482(a). The Supreme Court held in *Calhoun v. Harvey*, 379 U.S. 134 (1964) (*Calhoun*), that the Secretary of Labor could not be by-passed, and where union members have not in the first instance sought relief from the Secretary of Labor, a federal district court lacks subject-matter jurisdiction over their claims. *Calhoun* held that "disputes . . . basically relating as they do to eligibility of candidates for office, fall squarely within Title IV of the Act and are to be resolved by the administrative and judicial procedures set

11

out in that Title." *Calhoun*, 379 U.S. at 141.

However, an exception to this holding in *Calhoun* was recognized by the Second Circuit in *Schonfeld v. Penza*, 477 F.2d 899 (2d Cir. 1973) (*Schonfeld*). In *Schonfeld*, the plaintiff and fellow union members attacked a disciplinary action of a union which removed Schonfeld from office and declared him ineligible to run for union office until June 1973. Although the court noted that such allegations would generally fall under Title IV and must initially be presented to the Secretary of Labor, the court found that when union members' rights of free speech and of association, as opposed to rights of voting and elections, are invaded by union officials, the requirement of initial appeal to the Secretary of Labor under Title IV is inapplicable. Schonfeld alleged that the charges against him were pretextual and brought for the purpose of suppressing dissent and were "an expression of an anti-democratic policy and practice pursued over the past twenty years," which included a "policy of bringing charges or causing charges to be brought against those who exercise freedoms of speech." *Schonfeld*, 477 F.2d at 903. The court held that a determination of whether jurisdiction existed depended upon a close analysis of the complaint, and one could not obtain jurisdiction merely by alleging a denial of free speech rights. The court held that the district court had jurisdiction over Schonfeld's claims under Title I of the LMRDA because the allegations in Schonfeld's complaint could "be fairly said, as a result of established union history *or* articulated policy, to be part of a purposeful and deliberate attempt by union officials to suppress dissent within the union." *Schonfeld*, 477 F.2d at 904 (italics added.)

The Seventh Circuit endorsed the *Schonfeld* exception in *Driscoll v. v. Int'l Union of Operating Engineers*, 484 F.2d 682, 688 (7th Cir. 1973) (*Driscoll*), but declined to find a Title I claim in the case (in which plaintiff challenged a union's requirement that candidates for office execute an anti-communist affidavit) because the plaintiff's complaint did "not allege that the candidacy requirement [was] part of a purposeful program of suppressing any expression of dissent by plaintiff." *Id*.

Terranova has sufficiently alleged a Title I violation here. As in *Schonfeld*, a close analysis of the Complaint discloses that Terranova has set forth non-conclusory and detailed allegations, as well as supporting declarations and materials, sufficient to demonstrate a reasonable claim that the disciplinary charges and sanctions imposed by the union against Terranova were brought and imposed as a part of a purposeful program by the union leadership to suppress Terranova's opposition and dissent to leadership's fiscal management of the union.

Defendants argued that Terranova's allegations are insufficient to establish a Title I violation because Terranova has not alleged sufficient facts to show that the union had an established history, as in *Schonfeld*, of suppressing dissent. However, as emphasized above, the *Schonfeld* language relied upon by Defendants discussed "established history" as an alternative to ("or") "an articulated policy" as a means of showing an attempt to suppress dissent. Moreover, the Seventh Circuit's decision in *Driscoll* suggests no such requirement. *Driscoll* teaches that a Title I violation of free speech rights is shown where the union's conduct "is part of a purposeful program of suppressing any expression of dissent by plaintiff." Therefore, while a history of

13

suppressing dissent by a union is certainly one means of demonstrating a "purposeful program," a careful reading of the applicable cases discloses that a history of suppression of dissent is not a mandatory allegation for Title I relief.[4] Furthermore, even assuming a history of suppressing dissent is required, Donald Perry's declaration that he was disciplined and deemed ineligible for office in 2001 for opposing the incumbent leadership of the Local 73 in a similar manner to Terranova is sufficient, combined with Terranova's other relevant allegations, to support a remedy under Title I.

In sum, Terranova has sufficiently alleged a claim for relief under Title I of the LMRDA, and this Court has subject-matter jurisdiction.

*Injunctive Relief as an Appropriate Remedy*

Defendants argue that injunctive relief as requested by Terranova is not an appropriate remedy for a court to impose in a Title I claim during the course of a union election. Defendants rely on the Supreme Court's decision in *Local No. 82, Furniture Store Drivers, Helpers, Warehousemen and Packers v. Crowley*, 467 U.S. 526 (1984) (*Crowley*). *Crowley* considered whether "suits alleging violations of Title I may be properly maintained in district court during the course of a union election." *Crowley*, 467 U.S. at 528.

After reviewing the legislative history in the enactment of Titles I and IV of the LMRDA, the Court concluded:

---

[4]Otherwise, as the Court observed at the preliminary injunction hearing, a union would always get at least one free pass in suppressing a union's member's free speech rights under Title I before it had an actionable "established history" of doing so.

14

> [T]hroughout the congressional discussions preceding enactment of both Title I and Title IV, Congress clearly indicated its intent to consolidate challenges to union elections with the Secretary of Labor, and to have the Secretary supervise any new elections necessitated by violations of the Act. This strongly suggests that, even when Title I violations are properly alleged and proved, Congress would not have considered a court order requiring and judicially supervising a new election to be "appropriate" relief under Title I. At the same time, there is nothing in the legislative history suggesting that Congress intended to foreclose all access to federal courts under Title I during an election, **especially when a statutory violation could be corrected without any major delay or disruption to an ongoing election**. We therefore conclude that whether a Title I suit may properly be maintained by individual union members during the course of a union election **depends upon the nature of the relief sought by the Title I claimants**.

*Crowley*, 467 U.S. at 543 (emphasis added).

The Court further held that "appropriate relief under Title I may be awarded by a court while an election is being conducted. Individual union members may properly allege violations of Title I that are **easily remediable under that Title without substantially delaying or invalidating an ongoing election**." *Crowley*, 467 U.S. at 546 (emphasis added).

Here, the injunctive relief Terranova seeks is to have his name placed on the ballot as a candidate for the office of President and Business Manager in the June 6, 2009 union election in the place of Brian Mulheran, who, as noted above, has agreed to the substitution. This remedy would not create any delay or disruption to the upcoming Local 73 election and is relatively easy to accomplish. Moreover, printing a new ballot that substitutes Terranova's name for Mulheran's could be accomplished in time for the Saturday, June 6 election at a reasonable cost. The election can then proceed as scheduled without any further judicial supervision.

## *Exhaustion Requirement*

Finally, Defendants contend preliminary injunctive relief should be denied because Terranova has an available avenue for reversing the discipline challenged here in that a final appeal is pending before the SMWIA General Executive Council. However, there is no dispute that this appeal will not be heard until August 2009, at the earliest.

Title I provides that a union member "may be required to exhaust reasonable hearing procedures (but not to exceed a four month lapse of time) within such organization, before instituting legal or administrative proceedings against such organizations or any officer thereof." 29 U.S.C. § 411(a)(4). Requiring exhaustion of internal administrative processes, however, is within the discretion of the trial judge. *Giordani v. Upholsterers Intern. Union of North America*, 403 F.2d 85 (2d Cir. 1968). Furthermore, plaintiffs who demonstrate that appellate review would be futile in the face of existing bias at the appellate level have been excused from exhaustion of internal appeals. *Johnson v. General Motors*, 641 F.2d 1075 (2d Cir. 1981).

Terranova's appeal to the General Executive Council in this case would be futile first, because the appeal will not be heard until after the June 2009 election and, second, because the General Executive Council has already denied Terranova's request that the discipline, barring him as a candidate, be stayed. Terranova has diligently pursued the present remedies available to him both inside as well as outside of the union; to delay the relief sought here until after the June election until August, when the General Executive Council may hear the appeal, would be inequitable and futile.

Therefore, based on the foregoing, this Court has subject-matter jurisdiction to

decide Plaintiff's motion for the issuance of a temporary restraining order.

## DECISION

The standards for awarding preliminary injunctive relief have been met. First, Terranova has demonstrated a likelihood of success on the merits. As described above, Terranova has presented detailed, non-conclusory allegations and submissions that demonstrate a likelihood of success on the merits of Terranova's claim: that Defendants brought disciplinary charges against him and imposed discipline against him as a pretext for suppressing Terranova's dissent and opposition to the fiscal practices of Burek and to prevent Terranova's campaign against Burek in the June election and that this conduct violated Title I's protections of union members' rights of freedom of speech and assembly and was part of a "purposeful program of suppressing any expression of dissent" by Terranova. Terranova's submissions show that Terranova was charged and disciplined only after he declined to join Burek's slate, publically criticized Burek, particularly at a union meeting, and mounted a campaign against Burek.

Defendants argue Terranova was punished because he obtained and distributed documents, which contained the local union credit card number purportedly used by Burek to incur the purported improper charges at local restaurants. Defendants found this was improper conduct by Terranova and further that it tarnished the image of the union with these restaurants and would likely chill such establishments from dealing with the union in the future. However, when the specific sections of the union Constitution alleged to have been violated, the evidence offered at the hearing in support of the charges and the resulting findings by the Trial Board are considered, Terranova is more

17

likely to prevail on the merits on his claim that his conduct did not violate the union Constitution and that the union's actions were pretextual.

Second, Terranova has demonstrated that he will suffer irreparable harm. If the discipline against Terranova is not enjoined, Terranova will be prevented from running in the June 2009 election and will lose the opportunity to be elected and serve as the President and Business Manager of Local 73 for the next three years. Further, if Terranova is not on the June ballot, the rights of other union members who wished to support Terranova over Burek would also be irreparably harmed in that they will be prevented from voting for the candidate of their choice. Finally, the discipline against Terranova would likely chill further dissent and speech in opposition to Burek.

The balance of harms and public interest also weigh in favor of granting an injunction. The preliminary relief requested comes before the voting in the election has taken place, and placing Terranova's name on the ballot is relatively easy to accomplish. It is in the public interest to prevent the chilling of union members' rights of free speech and to stop suppression of dissent. Furthermore, a remedy exists for Defendants if the injunction is improvidently granted; they may contest the propriety of the injunction and seek to invalidate the election results, if necessary, under the remedial procedure set out in Title IV of the LMRDA, discussed above.

## CONCLUSION

For all of the reasons stated above, Plaintiff's Motion for Emergency Temporary Restraining Order and/or Preliminary Injunction is hereby granted insofar as it seeks an order requiring Defendants to place Plaintiff's name on the ballot as a candidate for the

office of President and Business Manager in the June 6, 2009 union election in the place of Brian Mulheran. Accordingly,

IT IS HEREBY ORDERED:

1. The union discipline issued by the Sheet Metal Workers International Association on or about April 24, 2009, against Rocco Terranova is enjoined only insofar as it holds Terranova to be "ineligible to hold any elected or appointed office or position" with the Sheet Metal Workers' Local Union No. 73;

2. Defendants Sheet Metal Workers International Association, Sheet Metal Workers' Local Union No. 73, Thomas Burek, Robert Schneider, Daniel Ahern, and Robert Bernacki are ordered to place Rocco Terranova's name on the election ballot in place of Brian Mulheran as the candidate for President and Business Manager on the Terranova Team in the June 6, 2009 election;

3. The posting of an injunction bond by Plaintiff Terranova is waived; and

4. This Order shall stand until further Order of this Court.

Date: June 4, 2009

JOHN W. DARRAH
United States District Court Judge